UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
|  | ) | CHAPTER 13 |
|  | ) |  |
| IN RE: | ) | CASE NO. 08-60172 |
|  | ) |  |
| DAVID ANDREW TERRELL, | ) | JUDGE RUSS KENDIG |
|  | ) |  |
| Debtor. | ) | **MEMORANDUM OF OPINION** |
|  | ) |  |

This matter is before the Court on Debtor's Motion for Relief from Judgment, filed under Fed. R. Bankr. P. 9024 on November 12, 2008. Debtor seeks relief from the Court's order, accompanied by a memorandum of opinion, of September 30, 2008, denying confirmation of Debtor's proposed chapter 13 plan. A status conference on the motion for relief from judgment was scheduled and held on December 3, 2008; neither the parties nor the Court requested further briefing. For the reasons set forth below, the Court grants Debtor's motion and vacates its previous order and opinion.

The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) and (O). The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

### FACTUAL AND PROCEDURAL BACKGROUND

Debtor, a single individual with above-median income, filed for protection under chapter 13 of the Bankruptcy Code on January 25, 2008. After a number of objections were filed to Debtor's initial Chapter 13 plan, he filed an amended chapter 13 plan on March 17, 2008. The chapter 13 trustee, Toby L. Rosen ("Trustee"), objected to this plan as well, as did one other creditor (on grounds not pertinent to the instant motion).

Debtor's initial B22C ("means test") filed with his petition declared negative disposable income. Debtor filed an amended B22C on June 12, 2008 declaring disposable income of $58.00. In both means test forms, line 47 includes a monthly payment of $628.00 per month on a mortgage held by HSBC. Debtor's original B22C also included $63.00 per month on line 48 as a "cure amount" owed on the HSBC mortgage; on his amended B22C, this figure was $40.00. According to Debtor's Schedule D, his primary residence was encumbered by two mortgages: one in favor of Option One Mortgage, valued at $212,000.00, and a second in favor of HSBC,

valued at $49,000.00. Debtor's plan proposed to strip the second mortgage and pay HSBC as an unsecured claim, and pay unsecured creditors no dividend. On May 6, 2008, Debtor filed a motion to determine property value seeking a determination that the second mortgage was fully unsecured; the Court granted that motion on June 9, 2008.

Trustee objected to the confirmation of Debtor's chapter 13 plan because Debtor both claimed a means test deduction for the monthly payment amounts on his second mortgage and proposed to (and ultimately did) strip that same mortgage and treat it as an unsecured claim.

On September 30, 2008, the Court entered an order sustaining Trustee's objection and denying confirmation of Debtor's plan, and an accompanying opinion. That opinion held that the effective date of the plan controlled the determination of the amount of disposable income, and that payments on an avoided lien could therefore not be used to reduce a debtor's current monthly income on Form B22C.

On October 8, 2008, Debtor filed a motion to extend the time to file a notice of appeal until October 30, 2008, which the Court granted; on October 28, 2008, Debtor filed a notice of appeal to the Bankruptcy Appellate Panel for the Sixth Circuit ("B.A.P.").

On November 12, 2008, with that appeal still pending before the B.A.P., Debtor filed the instant motion for relief from judgment under Fed R. Bankr. P. 9024. Debtor's motion argues that it is "no longer equitable" to let the opinion and order of September 30, 2008 stand because of new authority from the B.A.P., in which the B.A.P. considered an issue fundamentally indistinct from that in the instant case and reached a conclusion opposite to the one this Court did.

On December 4, 2008, Debtor withdrew his notice of appeal in this Court; on December 22, 2008, he also filed with this Court the B.A.P. order granting his motion to voluntarily dismiss his appeal in that court.

## LEGAL ANALYSIS

### I. Standard of Review Under Fed. R. Bankr. P. 9024

Motions for relief from judgment in bankruptcy court are governed by Fed. R. Bankr. P. 9024, which incorporates Fed. R. Civ. P. 60 into bankruptcy practice, with some limited exceptions, none of which are applicable here. Fed. R. Civ. 60(b) elucidates the circumstances under which a party may obtain relief from a final judgment, order, or proceeding:

> On motion and just terms, the court may relieve a party or its legal representative
> from a final judgment, order, or proceeding for the following reasons:

2

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed R. Civ. P. 60(b). Debtor's motion does not specifically cite which provision it invokes, but the fairest reading of the second sentence of his motion ("The debtor alleges that it is no longer equitable that the aforesaid judgment should have application.") is that it invokes Fed. R. Civ. P. 60(b)(5). That section of the rule, however, "normally applies to an order in the nature of an injunction or a declaratory judgment." Olle v. Henry & Wright Corp., 910 F.2d 357, 365 (6th Cir. 1990). See also Agostini v. Felton, 521 U.S. 203, 215 (1997), Associated Builders & Contractors v. Mich. Dept. of Labor and Economic Growth, 543 F.3d 275, 278 (6th Cir. 2008). Most court orders do not have prospective application, even if they cause an effect that will not change in the future; an order denying confirmation of a chapter 13 plan is not an injunction or declaratory judgment.

I proceed, therefore, to analyze Debtor's motion as one under Rule 60(b)(1), allowing for relief from a judgment on a showing of "mistake, inadvertence, surprise, or excusable neglect." The Sixth Circuit has interpreted this to apply in two scenarios: "(1) when the party has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." Cacevic v. City of Hazel Park, 226 F.3d 483, 490 (6th Cir. 2000); U.S. v. Reyes, 307 F.3d 451, 455 (6th Cir. 2002). Under the circumstances, given Debtor's submission of new appellate (if non-binding) authority, the fact that Debtor alleges no mistake of fact, litigation mistake, or unauthorized action by any party in this litigation and Trustee filed no response to the motion for relief, I interpret this as arguing that the final judgment of September 30, 2008 was based on a mistake of law.[1]

---

[1] It is also possible to construe Debtor's motion as one under Rule 60(b)(6), which allows relief from a judgment in the "extraordinary circumstance" of "an applicable change in decisional law, coupled with some other special circumstance." See Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund, 249 F.3d 519, 524 (6th Cir. 2001). However, that provision is to be invoked sparingly, for "exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." Id. While it is true that the primary impetus for this motion for relief is a new decision by the B.A.P., the fundamental nature of Debtor's motion remains one based on a strictly legal error, and "courts should apply Rule 60(b)(6) only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule ... [a] claim of strictly legal error falls in the category of 'mistake' under Rule 60(b)(1) and is thus not cognizable under 60(b)(6) absent

3

A Rule 60(b) motion is neither a substitute for, nor a supplement to, an appeal, and an appeal from the denial of rule 60(b) relief does not bring up the underlying judgment for review. GenCorp, Inc. v. Olin Corp., 477 F.3d 368, 373 (6th Cir. 2007); see also Browder v. Dir., Dep't of Corr. of Ill., 434 U.S. 257, 263 n.7 (1978). It appears at first brush that Debtor narrowly skirts this line, given that he filed and dismissed an appeal while moving for relief from judgment in this Court. However, I still conclude that he is not using Rule 60(b) in an improper manner or for an improper purpose. While appeals may be (and often are) used to argue that a lower court made a mistake of law, it cannot be the case that any motion under Rule 60(b) alleging a mistake of law in a court order is intrinsically a substitute for an appeal; such a reading would be irreconcilable with Cacevic and Reyes, which plainly allow Rule 60(b)(1) motions based on a judge's mistake of law.

The Sixth Circuit has not demarcated the boundary between impermissible "substitutes for an appeal" and mere motions for relief based upon a mistake of law. However, the cases in this circuit that have held that a party before it was impermissibly attempting to use a Rule 60(b) motion in lieu of an appeal generally involve circumstances in which a party either made no or vague references to an appropriate ground for relief under 60(b) or attempted to use the more generous time limits for motions for relief under Fed. R. Civ. P. 60(b) (one year after the entry of the judgment for motions under Rule 60(b)(1), (2), and (3), and "within a reasonable time" otherwise; Fed. R. Civ. P. 60(c)(1)) to escape more stringent limits for filing direct appeals, such as the default 30-day window for filing appeals of right under Fed. R. App. P. 4(a) or the 10-day window for appeals from this Court under Fed. R. Bankr. P. 8002(a). Most of the examples involve perfunctory dispositions by the Sixth Circuit in unpublished opinions, with minimal elaboration. See, e.g., Demann v. Ottawa County Sheriff's Dep't, 68 Fed.Appx. 642 (6th Cir. 2003) (unpublished) (district court was justified in finding no excusable neglect when motion was supported only by "vague, conclusory allegations"); Jarrell v. U.S. Army, 86 F.3d 1155 (6th Cir. 1996) (unpublished) (claim that claim was not barred by statute of limitations was attempt to use Rule 60(b) motion as a substitute for an appeal). I have found one opinion, likewise unpublished, in which the Sixth Circuit held a motion to reconsider based on alleged legal mistakes of the trial court to be an impermissible substitute for an appeal: Lyle v. Brazil, 169 F.3d 490 (6th Cir. 1998) (unpublished). Somewhat confusingly, the court in that case read the motion as being brought under 60(b)(6) despite also noting that the appellant was alleging "legal mistakes of the district court" and citing Hopper for the rule that claims of strictly legal error lie in the demesne of 60(b)(1). The court did not elaborate on either what brought the appellant's motion within 60(b)(6) instead of 60(b)(1), or on what made the motion "seeking relief in the nature of appellate review," Lyle at 490, rather than an allegation that the trial judge "made a substantive mistake of law" under Cacevic. To the extent that there is any conflict between the two, however, Cacevic is a reported opinion and is the stronger authority both by virtue of that

---

exceptional circumstances." Hopper v. Euclid Manor Nursing Home, Inc., 867 F.2d 291, 294 (6th Cir. 1989) (citations omitted). Given that the clear preference of this Circuit is to use the other, non-catchall provisions of Rule 60(b) when possible and there has been no express allegation of "exceptional or extraordinary" circumstances in this case, I proceed to treat this as a motion for relief due to mistake under 60(b)(1).

4

fact and by virtue of its substantially more thorough analysis of Rule 60(b). Debtor moves for relief based on an alleged mistake of law in the final judgment or order; Cacevic permits Rule 60(b)(1) to be used for this purpose. I turn then to the merits of that argument.

## II. The Means Test and the Thomas Opinion

The authors of the revisions to the Bankruptcy Code that brought the express and mechanical "means test" formula into the Code placed within chapter 7, and then directed debtors in chapter 13 cases to look to that same formula to compute their own disposable income. Therefore, there is no reason to apply the formula differently in chapter 13 cases than in chapter 7 cases, and in chapter 7 cases, the test is applied on the date of the petition.

Debtor's plan was originally denied confirmation pursuant to 11 U.S.C. § 1325(b)(1), which provides, in its entirety:

> (1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
>> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>>
>> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

"Projected disposable income" in § 1325(b)(1)(B) is not defined, but disposable income is defined in 11 U.S.C. § 1325(b)(2) and, for above-median-income debtors, § 1325(b)(3) as well:

> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—
>
>> (A)
>>
>>> (i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic

5

support obligation, that first becomes payable after the date the petition is filed; and

(ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548 (d)(3) to a qualified religious or charitable entity or organization (as defined in section 548 (d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

(3) Amounts reasonably necessary to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), shall be determined in accordance with subparagraphs (A) and (B) of section 707 (b)(2), if the debtor has current monthly income, when multiplied by 12, greater than—

(A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

(B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

(C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4.

Thus, rather than design a customized framework of allowable deductions from current monthly income specifically for the purposes of determining the disposable income of debtors in chapter 13 cases, Congress elected to test their expenses against the same standard–the "means test" of § 707(b)(2)–that forms part of one test for whether a case filed under chapter 7 is an abuse of the provisions of that chapter. The drafting of § 707(b)(2), however, indicates that it was designed with an eye toward application in chapter 13 proceedings as well, as some of its provisions apply only to expenses relevant in chapter 13 cases. See, e.g., 11 U.S.C. § 707(b)(2)(A)(ii)(III), (iii)(II). In other words, the means test was given a dual role in the revised Bankruptcy Code's scheme: the test for abuse under chapter 7, and the test for disposable income under chapter 13.

6

Debtor in this case is separated, has no dependents, and has an income above the median income for a single individual in Ohio. As applied, therefore, Debtor's disposable income is his current monthly income, as defined in 11 U.S.C. § 101(10A), less the deductions he is allowed under the means test at § 707(b)(2)(A) and (B). The critical deduction for the instant case is the deduction for average monthly payments on account of secured debts, defined as follows in § 707(b)(2)(A)(iii):

> (iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of—
>
>> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and
>>
>> (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;
>
> divided by 60.

The overwhelming majority of the cases in the chapter 7 context have held that this deduction is available to chapter 7 debtors even if they plan to surrender the collateral securing the debt. A representative sample of such cases is contained in the recent decision of the Bankruptcy Appellate Panel for the Sixth Circuit upon which Debtor relies, Hildebrand v. Thomas (In re Thomas), 395 B.R. 914 (B.A.P. 6th Cir. 2008). Id. at 920. In this case, Debtor took a secured debt deduction for payments he was going to avoid by stripping the lien, not by surrendering the collateral; however, in this context, this is a distinction without a difference. The fundamental issue is the propriety of taking a deduction for payments on account of secured debts when that security interest, for one reason or another, will be extinguished in the near future.

The Sixth Circuit has not yet published any ruling concerning the binding effect of bankruptcy appellate panel decisions. Signal v. Livingston (In re Livingston), 379 B.R. 711, 726 (Bankr. W.D. Mich. 2007). Bankruptcy courts in this circuit have reached conflicting conclusions regarding the precedential effects of bankruptcy appellate panel decisions. Compare id. (holding that such decisions are not binding because, *inter alia*, the doctrine of *stare decisis* arises from the inevitability of reversal on appeal, and bankruptcy appellate panels can only hear appeals from bankruptcy courts if all parties to the appeal consent) with Rhiel v. OhioHealth Corp. (In re Hunter), 380 B.R. 753 (Bankr. S.D. Ohio 2008) (holding that, in the interests of uniform case law throughout a district and predictability of results, bankruptcy courts should treat bankruptcy appellate panel decisions as binding).

7

Hunter gives a thorough analysis of both lines of authority, which I will not repeat here. However, my interpretation of the law coincides with Judge Hughes in Livingston, and the decisions and secondary sources cited in Hunter as contrary to the opinion Judge Hoffman ultimately reached in Hunter. The fact that any party in a litigation can bypass the bankruptcy appellate panel, appealing instead to the district court for this district, which is compelled to follow neither its own previous decisions nor those of the bankruptcy appellate panel for this district, means that this court need not impose upon parties before it the decisions of the bankruptcy appellate panel, because the panel will never have the opportunity to do so itself. This stands in stark contrast to decisions of the Sixth Circuit, which, because its panels do not overrule previous panels, see 6th Cir. R. 206(c), and because all parties before this court have eventual appeals as of right to the Sixth Circuit, albeit one level of review removed from here, any decision I might render contrary to a Sixth Circuit decision would be fated for reversal but for the time, expense, and sheer aggravation of two appeals. The doctrine of *stare decisis* and principles of comity forbid me from making any litigant run the triathlon of this court, the district, and the circuit merely to hear the circuit declare again what it has already both declared and committed itself to declaring again, absent the "extraordinary procedure" of *en banc* review. See 6th Cir. R. 35(c). No such concerns compel adherence to bankruptcy appellate panel decisions. However, bankruptcy appellate panel decisions are nevertheless persuasive authority. See In re Cormier, 382 B.R. 377, 411 (Bankr. W.D. Mich. 2008) (holding BAP opinions are to be given the same deference accorded district court appellate opinions, treated as extremely persuasive, and generally followed, but that a bankruptcy court is free to disagree with the BAP or the district courts if it has a "deeply considered and well-reasoned analysis"). See also In re Virden, 279 B.R. 401, 409 n.12 (Bankr. D.Mass. 2002) ("[a]lthough the BAP decision may be persuasive authority, it is not binding precedent on this Court."); Daly v. Deptula (In re Carrozzella & Richardson), 255 B.R. 267, 273 (Bankr. D.Conn. 2000) ("[T]his Court will regard BAP opinions as highly persuasive though not binding, precedent."); In re Cox, 393 B.R. 681, 687 (Bankr. W.D. Mo. 2008) ("[D]ecisions of the Bankruptcy Appellate Panel, while not binding on this Court, are persuasive.").

In this case, the bankruptcy appellate panel's decisions is persuasive, and rather than bother trying to paraphrase, I will simply incorporate its conclusion with respect to disposable income here:

> [A]t least for purposes of calculating "disposable income" under § 1325(b)(2), there is no logical reason why disposable income should be calculated differently in a chapter 13 case than it is in a chapter 7 case. See, e.g., In re Quigley, 391 B.R. 294 (Bankr. N.D. W.Va. 2008) (§ 1325(b)(3) does not alter the language or the application of § 707(b)(2)); In re Ries, 377 B.R. 777, 783-84 (Bankr. D.N.H. 2007) (Congress has directed the bankruptcy courts to use the same methodology under the means test to compute the disposable income for above median income debtors in both chapter 7 and chapter 13 proceedings); In re Burmeister, 378 B.R. 227 (Bankr.N.D.Ill.2007) (there is no reason why the means test should be applied differently in chapter 7 and chapter 13 cases).

8

Thomas at 922. The panel could find no clearly expressed legislative intention to treat secured debt expenses differently in the chapter 7 means test and the chapter 13 disposable income test, id., and neither can I. Absent a strong showing of legislative intent to the contrary, I cannot justify treating debtors subject to the same code provision differently merely because they reached that waypoint via alternate paths. The means test is not a dynamic character that the reader meets in chapter 7 and watches evolve until chapter 13; it is a machine-like formula, which is to be applied consistently whenever and wherever it is used. "The means test is a mechanical, formulaic approach that as applied is no different in chapter 7 than it is in chapter 13 ... [t]herefore, a chapter 13 debtor may deduct, for purposes of determining *disposable income* under § 1325(b)(2), payments for collateral the debtor intends to surrender." Id. (emphasis in original). Whether that mechanistic approach describes a mechanism effectively matching means and ends or appropriate to all functions it was assigned is not my concern; when a statute's language is clear, "the sole function of the courts is to enforce it according to its terms." U.S. v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989) (internal quotation omitted). I cannot engage in well-intentioned tinkering to make a machine be more or less than the algorithm that is its sole force. The wisdom of the machine is a decision entrusted to others. I no longer shall tinker with the machinery of debt.

For the reasons explained above, I conclude that the opinion and order of September 30, 2008 were based on a mistake of law.

Agreeing that Debtor may deduct his secured debt expenses on his means test does not equate to confirming his plan, however; the latter determination affects only the determination of Debtor's disposable income under § 1325(b)(2), whereas confirmation of a plan hinges upon Debtor's commitment of his *projected* disposable income under § 1325(b)(1). Therefore, this matter must be set for a new confirmation hearing, so that the Court can ascertain whether debtor is actually applying all of his projected disposable income to the plan.

The order and opinion of September 30, 2008 will be vacated by a separate order to be entered contemporaneously with this opinion. Debtor's original plan remains unconfirmed but not denied confirmation, and the Court will schedule a new confirmation hearing.

/s/ Russ Kendig
RUSS KENDIG
U.S. BANKRUPTCY JUDGE

9

**Service List:**

David Andrew Terrell
1650 Cadney NE
Canton, OH 44714

Donald M Miller
1400 Market Ave N
Canton, OH 44714-2608

Toby L Rosen
400 W Tuscarawas St
Charter One Bank Bldg
4th Floor
Canton, OH 44702